# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JAMES MURRAY, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

 v.

LEVEL 3 COMMUNICATIONS, INC.,
JAMES O. ELLIS, JR.,
JEFF K. STOREY,
KEVIN P. CHILTON,
STEVEN T. CLONTZ,
IRENE M. ESTEVES,
T. MICHAEL GLENN,
SPENCER B. HAYS,
MICHAEL J. MAHONEY,
KEVIN W. MOONEY;
PETER SEAH LIM HUAT, and
PETER VAN OPPEN,

      Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY TRIAL DEMAND

---

James Murray ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for his own acts, which is alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.      This is a stockholder class action brought by Plaintiff on behalf of holders of the common stock of Level 3 Communications, Inc. ("Level 3" or the "Company") against the Company and its board of directors (the "Board") for their violations of Sections 14(a) and 20(a)

of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules and Regulations promulgated thereunder, including Rule 14a-9, in connection with the proposed acquisition of Level 3 by CenturyLink, Inc. ("CenturyLink").

2.      On October 31, 2016, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") on October 31, 2016 by which CenturyLink, through its wholly-owned subsidiaries, Wildcat Merger Sub 1 LLC and WWG Merger Sub LLC, will enter into a transaction (the "Proposed Transaction") to acquire all of the outstanding shares of Level 3. Each share of Level 3 common stock will be cancelled and converted into the right to receive $26.50 in cash and 1.4286 shares of CenturyLink common stock. The Proposed Transaction is valued at approximately $19.43 billion.

3.      Defendants (defined below) violated the above-referenced sections of the Exchange Act, and rules and regulations promulgated by the U.S. Securities and Exchange Commission ("SEC"), by filing a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the SEC on February 13, 2017.  The Proxy recommends that Level 3 stockholders exchange their shares pursuant to the terms of the Merger Agreement based among other things on the opinion rendered by the Company's financial advisor, Citigroup Global Markets, Inc. ("Citi") and Lazard Frères & Co. LLC ("Lazard").and other internal and external factors the Level 3 Board purportedly considered to make the recommendation.

4.      The Proxy also sets a shareholder vote on **March 16, 2017,** and thus solicits votes in contravention with the Exchange Act.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Individual

Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act, this Court has

jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the

Exchange Act and SEC Rule 14a-9 promulgated thereunder.  17 C.F.R. §240.14a-9.

7.      The Court has jurisdiction over Defendants because each is either a corporation

that conducts business in and maintains operations in this District, or is an individual who has

sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this

Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Level 3

maintains its primary place of business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all relevant times, a stockholder of Level 3.

10.      Level 3 is a corporation organized and existing under the laws of the State of

Delaware and headquartered in the State of Colorado with offices at 1025 Eldorado Boulevard,

Broomfield, Colorado, 80021. Common stock in Level 3 is publicly traded on the New York

Stock Exchange ("NYSE") under the ticker symbol "LVLT."

11.      Defendant Admiral James O. Ellis, Jr. ("Ellis") has served as Chairman of the

Board since May 2014 and as a director of the Company since March 2005.

12.      Defendant Jeff K.  Storey ("Storey") has been  a  director  of  the Company since

May 2013 and is President and Chief Executive Officer of the Company.

13.     Defendant General Kevin P. Chilton ("Chilton") has served as a director of the Company since April 2012.

14.     Defendant Steven T. Clontz ("Clontz") has served as a director of the Company since April 2012.

15.     Defendant Irene M. Esteves ("Esteves") has served as a director of the Company since October 2014.

16.     Defendant T. Michael Glenn ("Glenn") has served as a director of the Company since October 2012.

17.     Defendant Spencer B. Hays ("Hays") has served as a director of the Company since October 2014.

18.     Defendant Michael J. Mahoney ("Mahoney") has served as a director of the Company since August 2007.

19.     Defendant Kevin W. Mooney ("Mooney") has served as a director of the Company since October 2014.

20.     Defendant Peter Seah Lim Huat ("Seah") has served as a director of the Company since October 2011.

21.     Defendant Peter van Oppen ("Oppen") has served as a director of the Company since March 2013.

22.     The Defendants above are collectively referred to hereinafter as the "Individual Defendants."

23.     Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the

4

liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

24.     Collectively, the Individual Defendants, Level 3 referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff bring this action on his own behalf and as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of Level 3 common stock who are holders of record and entitled to vote on the Proposed Transaction and are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

26.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable. As of January 25, 2017, Level 3 had outstanding approximately 360.08 million shares of Common Stock. Class members are believed to be geographically dispersed.

(b)     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class;

(c)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

(d)     To the extent Defendants take further steps to effectuate the Proposed Transaction, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

27.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     Whether Defendants have violated Section 14(a) of the Exchange Act, Rule 14a-9, or other SEC rules that apply to the disclosure of Level 3 financial data to Company stockholders in the Proxy;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

**SUBSTANTIVE ALLEGATIONS**

36.     Level 3 is an integrated communications network company that provides Internet protocol and data services, as well as content distribution, co-location, and softswitch and voice services.

37.     In a press release dated October 31, 2016, the Company announced that it had entered into the Merger Agreement with CenturyLink, pursuant to which the Company will become an indirect wholly-owned subsidiary of CenturyLink through a series of transactions.

38.     The press release states as follows:

Monroe, LA. and Broomfield, CO. — October 31, 2016 — CenturyLink (NYSE: CTL) and Level 3 Communications, Inc. (NYSE: LVLT) today

announced that their Boards of Directors have unanimously approved a definitive merger agreement under which CenturyLink will acquire Level 3 in a cash and stock transaction valued at approximately $34 billion, including the assumption of debt. Under terms of the agreement, Level 3 shareholders will receive $26.50 per share in cash and a fixed exchange ratio of 1.4286 shares of CenturyLink stock for each Level 3 share they own, which implies a purchase price of $66.50 per Level 3 share (based on a CenturyLink $28.00 per share reference price) and a premium of approximately 42 percent based on Level 3's unaffected closing share price of $46.92 on October 26, 2016, the last trading day prior to market speculation about a potential transaction. Upon the closing of the transaction, CenturyLink shareholders will own approximately 51 percent and Level 3 shareholders will own approximately 49 percent of the combined company.

The combined company will have the ability to offer CenturyLink's larger enterprise customer base the benefits of Level 3's global footprint with a combined presence in more than 60 countries. In addition, the combined company will be positioned to further invest in the reach and speeds of its broadband infrastructure for small businesses and consumers.

"The digital economy relies on broadband connectivity, and together with Level 3 we will have one of the most robust fiber network and high-speed data services companies in the world," said Glen Post, CenturyLink Chief Executive Officer and President. "This transaction furthers our commitment to providing our customers with the network to improve their lives and strengthen their businesses. It is this focus on providing fiber connectivity that will continue to distinguish CenturyLink from our competitors. CenturyLink shareholders will benefit from the significant synergies and financial flexibility provided by the combined company's revenue growth and strong cash flow. For employees, this combination will bring together two highly customer-focused organizations and provide employees growth and advancement opportunities the companies could not offer separately."

"This is a compelling transaction for our customers, shareholders and employees," said Jeff Storey, President and Chief Executive Officer of Level 3. "In addition to the substantial value delivered to shareholders, the combined company will be uniquely positioned to meet the evolving and global needs of enterprise customers."

….

After the close of the transaction, Glen Post will continue to serve as Chief Executive Officer and President and Sunit Patel, Executive Vice President and Chief Financial Officer of   Level 3, will serve as Chief Financial Officer of the combined company.

The Chairman of CenturyLink's Board at the time of the  closing of the transaction will continue to serve as Chairman of the combined company. CenturyLink has agreed to appoint four Level 3 Board members at closing, one of whom will be a representative of STT Crossing Ltd., a wholly owned subsidiary of Singapore Technologies Telemedia Pte Ltd ("ST Telemedia").

The combined company will be headquartered in Monroe, Louisiana and will maintain a significant presence in Colorado and the Denver metropolitan area.

39.    Level 3 stockholders will have the right to receive, in exchange for each share of Level 3 common stock, $26.50 in cash and 1.4286 shares of CenturyLink stock (the "Merger Consideration").

40.    The Proposed Transaction is set for a shareholder vote on March 16, 2017 and would close thereafter if the shareholder vote passes.

**The Proxy Fails to Disclose Material Information**

41.    On February 13, 2017, Level 3 filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the

Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

55.     First, the Proxy fails to provide material information concerning the Company's and CenturyLink's financial projections. Specifically, the Proxy provides projections for various non-GAAP metrics including Revenue, EBITDA, and Capital Expenditures for both Level 3 and CenturyLink and Unlevered Free Cash Flow for Level 3, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP (*see* Proxy at 114-117).

56.     When a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

57.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. The SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Level 3 and CenturyLink have included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be

considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.

58.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

59.     The above-referenced line item projections that have been omitted from the Proxy for both Level 3 and CenturyLink are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.  Indeed, while the Proxy notes that "*Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Level 3 may not be comparable to similarly titled amounts used by other companies*,"  Proxy at 417, Defendants have nevertheless asked Level 3 shareholders to rely on the various non-GAAP projections included in the Proxy in connection with assessing the fairness of the Proposed Transaction.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[2] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

60.    The omission of the line item projections used to calculate the various non-GAAP measures included in the Proxy (*i.e.* the metrics referenced in notes 1 at 114-15 and in notes 1-3 on at 117), and/or the most directly comparable GAAP measures, renders the projections included on pages 114-17 of the Proxy materially incomplete and misleading.

61.    The Proxy also fails to provide sufficient information for shareholders to assess the valuation analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi") and Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion and to assess certain conflicts of interests one of the Company's bankers faced.

62.    With respect to Citi's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples Citi calculated for each of the companies and transactions used in these analyses.  Proxy at 92.  Instead, the Proxy only provides the low and high multiples for the Level 3 analysis, and there is not even a mean or median figure.

63.    With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the unlevered free cash flow for CenturyLink from 2016-20 used in the analysis. In contrast, the unlevered free cash flow used by Citi for Level 3 is disclosed in the Proxy. Proxy at 117.

64.    With respect to Lazard's *Selected Comparable Company Multiples Analysis*, the Proxy fails to disclose the individual multiples Lazard calculated for each of the companies and transactions used in these analyses.  Proxy at 99-100.  Instead, the Proxy only provides the low and high multiples for the Level 3 and CenturyLink analysis, and there is not even a mean or median figure.  In contrast, Lazard's *Selected Precedent Transaction Multiples Analysis* does provide the individual observed multiples for each transaction observed.

65.    The Proxy indicates that Mr. Patel will obtain post-close employment as Chief Financial Officer of the combined company following retirement of Mr. Ewing, CenturyLink's

current Chief Financial Officer. (Proxy at 106-107). The Proxy does disclose, however, the timing of discussions leading to Mr. Patel's employment offer and whether Mr. Patel made the Proposed Transaction contingent on his employment, which would be a disabling conflict.

66.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## <u>COUNT I</u>

### On Behalf of Plaintiff for Violations of Sections 14(a) and of the Exchange Act <u>Against the Company and the Individual Defendants</u>

67.     Plaintiff repeats and realleges each allegation set forth herein.

68.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

69.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9..

70.     Specifically, the Proxy violates Section 14(a), Rule 14a-9 and Regulation G because it omits material facts as set forth above which renders the statements and information identified above false and/or misleading.  Moreover, in the exercise of reasonable care,

Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

71.     The misrepresentations and omissions in the Proxy are material to Plaintiff who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

72.     Plaintiff and the members of the Class have no adequate remedy at law.

**COUNT II**

**Claims for Violations of Section 20(a) of the Exchange Act<br>Against the Individual Defendants**

73.     Plaintiff repeats and realleges each allegation set forth herein.

74.     The Individual Defendants acted as controlling persons of Level 3 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Level 3, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

75.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger.  Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

77.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

78.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

80.     Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in their favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representatives and his counsel as Class Counsel;

B.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATE: February 14, 2017                         Respectfully submitted,

                                                 */s/ Rusty E. Glenn*
                                                Rusty E. Glenn
                                                **THE SHUMAN LAW FIRM**
                                                600 17th Street, Suite 2800 South
                                                Denver, CO 80202
                                                Telephone: (303) 861-3003
                                                Facsimile: (303) 536-7849
                                                Email: rusty@shumanlawfirm.com

                                                Kip B. Shuman
                                                **THE SHUMAN LAW FIRM**
                                                Post-Montgomery Ctr.
                                                One Montgomery Street, Ste. 1800
                                                San Francisco, CA 94104

Telephone: (303) 861-3003
Facsimile: (303) 536-7849
Email: kip@shumanlawfirm.com

*Local Counsel for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Ph. (212) 971-1341
Cell (305) 205-8284 or (646) 522-4840
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, James Murray ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Level 3 Communications, Inc. ("Level 3" or the "Company") and the members of its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Monteverde & Associates PC and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Level 3 securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, unless otherwise specified below.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 14 day of February , 2017

James Murray

| Transaction<br>(Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 1998 | 1,300 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |